## Case No. 1,631.

### BONNER v. NEW ORLEANS et al.

[2 Woods, 135.] [1]

Circuit Court, D. Louisiana.   Nov. Term, 1875.

NEGOTIABLE INSTRUMENTS—INDORSEMENT—NON-PAYMENT—NOTICE.

1. A railroad company is bound as indorser of a negotiable bond issued by a municipal corporation, payable to the railroad company or assigns in twenty years, which the company has transferred by indorsement; the municipal corporation having failed to pay on demand at maturity, and the proper steps having been taken to charge the company as indorser.

2. To charge an indorser, the certificate of the notary need not show that notice of demand and nonpayment was served on the indorser during business hours of the day after demand. If notice was served at any time during that day, it is sufficient.

This was an action brought by [William Bonner] the holder of a bond for $1,000, issued by the city of New Orleans, payable to the New Orleans, Jackson & Great Northern Railroad Company, or their assigns, in twenty years from date, with interest, and dated May 1, 1854.

It appeared on the face of the bond, that it was one of a series of two thousand bonds of $1,000 each, authorized by an act of the legislature of Louisiana, approved March 15, 1854, to be issued by the city to the railroad company in payment of the subscription of the city to the stock of the railroad company, and transferable by the indorsement of the president and secretary of the railroad company. The plaintiff offered the bond in evidence and proved the indorsement of the president and treasurer of the railroad company, which was in these words: "The New Orleans, Jackson & Great Northern Railroad Company, for value received, hereby transfers the within bond to the New Orleans Savings Institution, or assigns." The indorsement of the bond by the latter company to the plaintiff was also shown. The plaintiff also introduced the certificates of the notary public, under his seal, to the effect that he had demanded payment of the bond of the city of New Orleans, both on the 1st and 4th of May, 1875, and that payment was on both occasions refused, and that on both the 2d and 5th of May, he had delivered notices of protest to S. H. Edgar, the vice president of the railroad company, at its office in New Orleans, the president of the company being absent. Upon these facts, the city of New Orleans admits its liability, but the railroad company denies that any ground for recovery against it is shown. No recovery is asked against the Savings Institution. [Judgment against defendant company.]

John M. Bonner, for plaintiff.

B. F. Jones, City Atty., for city of New Orleans.

T. J. Semmes, for railroad company.

WOODS, Circuit Judge. The bond is a negotiable instrument, having all the qualities of commercial paper. Commissioners of Knox Co. v. Aspinwall, 21 How. [62 U. S.] 539; Mercer Co. v. Hackett, 1 Wall. [68 U. S.] 83; Gelpcke v. City of Dubuque, 1 Wall. [68 U. S.] 175; Myer v. City of Muscatine, 1 Wall. [68 U. S.] 384. But while this general proposition is not disputed, it is claimed that the effect of the indorsement of the railroad company was simply to transfer the title to the bond, and the company did not thereby enter into the conditional contract to pay the bond which results from the indorsement of ordinary commercial paper. In short, that by its indorsement the company did not assume the liability of an indorser. The authorities cited do not justify the distinction drawn. These bonds are said to have all the qualities of commercial paper. One of these qualities is that the indorser becomes bound in case of demand, nonpayment and notice. The act of the legislature, recited on the face of the bond, gives the railroad company express power to transfer the bonds by indorsement. The railroad company has exercised the power and there is no reason why it should not assume the responsibilities of the act, unless it is made to appear that no such responsibility was fairly in the contemplation of the railroad company or the commercial public to whom the bonds were sold. The indorsement is unrestricted. The railroad company might have qualified its indorsement if it had so chosen, and thus have avoided liability. Having power to indorse, it would seem that it assumed by its indorsement the same liabilities as an individual. Doubtless the credit of the bond was improved by the indorsement of the railroad company, and the fair presumption is that the indorsement was made not only to transfer the bond but to add to its credit. If this be true, the company ought to be held to its liability as indorser.

But it is said this liability was not fairly in the contemplation of the parties to the bond; that the bond had twenty years to run; that many similar bonds have forty or fifty years to run, and it is not to be supposed that the indorser or holder contemplated that the conditional liability of an indorser of such paper should hang over him for a time; in all probability reaching beyond his natural life. There would be force in this argument if the indorser were a natural person. But a railroad corporation does not die. It may live for centuries, and there is no reason why it should not indorse bonds, and have its liability as indorser fixed by demand and notice on bonds running twenty, forty or sixty years. In my judgment, the argument to relieve the railroad company of its liability as indorser on these bonds cannot prevail.

It is said by way of further defense that

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

the certificate of the notary does not show that notice of demand and nonpayment was served on the vice president of the railroad company during business hours of the day, after demand. The protest shows that notice was given to the principal officer of the company present in the city at the office of the railroad company during the next day. That is a sufficient service of notice. It need not be served within business hours. Bayley, Bills & N. (5th Ed.) c. 7, § 2,268; Story, Bills, § 288-290, 382; Chit. Bills (8th Ed.) c. 10, §§ 513, 514, 518.